## E. E. Naugle, W. H. Holcomb and A. P. Hopkins v. Charles T. Yerkes.

1. RESCISSION OF CONTRACTS—*When the Parties Can Not be Placed in Statu Quo.*—A contract can not be rescinded, when from any cause the parties can not be placed in *statu quo.*

2. SAME—*Equity Jurisdiction.*—Equity does not deal with things in the abstract, but with actual dealings. The court holds that no case for rescission is made by the bill in this case, and no equity being shown, except such as the law side of the court has ample means for enforcing, the bill was properly dismissed.

**Bill in Equity,** to obtain the rescission and cancellation of an agreement in writing. Trial in the Circuit Court of Cook County; the Hon. MURRAY F. TULEY, Judge. presiding. Bill dismissed on demurrer; appeal by complainant. Heard in the Branch Appellate Court at the October term, 1898. Affirmed. Opinion filed June 9, 1899.

CHARLES H. ALDRICH, attorney for appellants.

KNIGHT & BROWN, attorneys for appellee.

MR. JUSTICE SHEPARD delivered the opinion of the court.

The appellants exhibited their bill in equity to obtain the rescission and cancellation of a certain agreement in writing, dated July 26, 1897, made between themselves, as the firm of Naugle, Holcomb & Co., and the appellee, Yerkes, and to obtain from Yerkes an accounting for certain bonds and stocks of the Suburban Railroad Company, received by him in pursuance of said agreement, and the possession of said railroad and the income therefrom since the date of the agreement, and for such other, further and different relief as might be equitable.

Naugle v. Yerkes.

A demurrer, both general and special, was sustained to the bill, and the bill dismissed for want of equity, but without prejudice to an action at law by appellants.

The Suburban Railroad Company (originally the "Suburban Electric") was the beneficiary of certain city, town and village ordinances under which it was entitled to construct and operate a line of railroad in Cook and other counties, and the Suburban Construction Company had the contract for building and equipping the road.

By contract with the latter company the appellants undertook the construction of the road and did a large amount of work upon it. A part of the road was substantially completed, and was being operated by appellants, who, under their said contract, were in control and possession of the whole line. Controversies and litigations arose, fostered, as alleged by appellee, between other parties in interest, including the Suburban Construction Company and the appellants, whereby the financial and physical ability of appellants to complete the road in time to save its rights under the ordinances, or some of them, was imperiled, if not destroyed. Thereupon, and under such circumstances, the contract sought to be rescinded was entered into between appellants and appellee.

By the terms of the contract in question appellants agreed to procure the resignation of the then existing boards of directors of both the Suburban Railroad Company and the Suburban Construction Company, and cause to be elected in their places such other persons as appellee should designate, and this was done; there was also assigned to appellee a large if not a controlling interest in the stock and bonds of said railroad corporation; the contract of appellants with the Construction company was agreed to be and was assigned by appellants to appellee personally; the appellants also agreed to complete the unfinished part of the road and do what is termed in the contract certain "special" work, including the building of a power house.

For all these things and others appellee agreed to pay certain large sums of money and assume certain large liabilities and obligations of the appellants.

For the "special" work to be done in connection with the construction and equipment of the road, including the building of a power house by appellants, the appellee was to pay for at cost, to be determined by one M. K. Bowen.

It is in connection with the determination by Bowen of the cost of this special work and the building of the power house that the *gravamen* of the bill lies, and the appellants aver they have not received or accepted anything on account of the contract since they discovered the relations between appellee and said Bowen. The bill alleged, in respect of Bowen's relations with appellee, as follows:

"Your orators further show that immediately upon the execution of said contract your orators turned over to said Yerkes and his agents, the stocks and bonds in their possession in accordance with the terms thereof and the possession of said railroad, although they continued to operate the same for a period as provided in said contract. Various sums of money were paid to your orators, and your orators were expecting to go on with the provisions of said contract, when they learned that M. K. Bowen—to whom there was assigned, under and by the terms of the said proposition and contract, the duty of ascertaining the cost of certain special work and the power house, no part of the cost of either said special work or said power house having yet been paid to your orator—had been employed by said Charles T. Yerkes as his agent and representative in the matter of estimating and reporting the cost and price to be paid for the special work and the power house under the terms of said contract; and instead of impartially and justly investigating the actual cost to your orators and their predecessors in interest of the matters and things so to be investigated and ascertained by him, he regarded himself, by virtue of such employment, as the agent and representative of said Charles T. Yerkes, and bound to obey the instructions of the said Charles T. Yerkes therein; and openly confessed to your orators that he would return the cost at one-half or one-third the actual cost if he was so instructed by said Charles T. Yerkes."

We infer from the bill and the statements in appellants' brief that, except for such alleged interference by appellee with the impartiality of Bowen, the appellants would not claim they had any ground for asking the intervention of a court of equity in the premises.

Counsel for appellants says in his brief as follows:

" The court will observe from a reading of that contract that while the price of some parts of the property is agreed upon and specified therein, the sum to be paid for the power house, then in process of construction, and for the special work used in the construction of the road, was left to be ascertained by one M. K. Bowen.   *   *   *   The complaint of the bill is, that upon the execution of this contract and immediately thereafter, and after the appellants had delivered into the possession of the appellee the railway property in question and the bonds and stocks of the railroad company as provided therein, the appellee, Yerkes, unwilling to leave Mr. Bowen an impartial factor in this important transaction, and with his mind and judgment unhampered by undue influences in the premises, secured Mr. Bowen into his employment and gave Mr. Bowen to understand what his wishes were in the matter of the determination by him of the costs of these various properties, and thereby rendered it impos- sible for Mr. Bowen to act as a fair and impartial arbiter in the matters assigned to him.   *   *   *   When appellants became apprised of this disposition on the part of Mr. Bowen in the matters assigned to him by the contract, they refused to consent to Mr. Bowen's further action in the premises, and received no further payments from the appellee upon the matters provided in the contract, and filed their bill for a rescission of the contract, praying for a cancellation thereof, and offering to restore to the appellee all sums received by them, or paid by him for their account, under and in pursuance of said contract.   *   *   *   The bill avers that by the fraudulent conduct on the part of appellee in so taking Bowen into his employment, and because of the con- sequent prejudice of said Bowen against appellants in refer- ence to the matters left to his determination, it is impossible for appellants to receive the full benefits of the contract to which they would otherwise have been entitled, and prays a cancellation thereof, and a return to them of the stocks and bonds received by appellee from them, and a restoration to them of the possession of the property received from them and held by appellee, and for necessary injunctional orders in connection therewith."

The contract set forth in the bill provided for the payment by the appellee of large sums of money, aggregating several hundred thousand dollars, which the necessary inference is, it not being negatived, have been paid to or for appellants.

Indeed, we have been unable to find in the bill or in the brief of appellants, any claim that the appellants remain entitled to receive anything more except for the special work and power house, the cost of which was to be determined by Bowen. There is an allegation in the bill to the effect that an item of $50,000, assumed to be paid to the Pullman Company by appellee, has not been paid, but no relief appears to be asked on that account.

We have unsuccessfully searched the bill to find how much of the special work was done by appellants before they discovered the alleged fraudulent arrangement between appellee and Bowen, or how much of it remained to be done, or what the fair worth is of that part that was done.

The inference probably is that no part of the special work has been paid for, but how much it is that appellants have done, for which they ought to be paid, we do not find averred, nor its value.

This case thus seems to be that appellants have been paid for everything except the special work and power-house, and if they have done anything to entitle them to be paid in such respects, no statement as to what, if anything, they are in good conscience entitled to for such matters, appears in the bill.

Probably some of the work was done, for it is alleged that Bowen made a pretended report, as to some matters which are not stated, " fixing the sums in many instances at less than one-half what was actually due to your orators." The intendment from such an allegation is that in all other " instances " the report was proper and correct, and the bill is silent as to what amount was involved in the " many instances " mentioned.

The theory of the bill seems to be that because of the incapacity of Bowen, through fraudulent design, or otherwise, to impartially fix the value of particular items of work, everything that had been done and paid for should be turned back to appellants, they refunding what they had received for it.

Here was a partly completed road that was, in effect, sold to appellee for several hundred thousand dollars. By

contract between appellants, the vendors, and appellee, the vendee, the former substantially completed the road and were paid by appellee for so doing.

But now because of certain special work to be done by appellants, concerning which differences have arisen, and the method provided by the contract of ascertaining the value thereof has become corrupted so it can not be availed of, appellants ask to have back the completed road in place of the uncompleted one they sold, they paying back to the vendee all that he has paid out, less the income of the road in the meantime. It would be impossible from the nature of the transactions and the necessary inferences from what the bill alleges, to put the parties in *statu quo*.

To grant such a decree upon the showing made, would be inequitable in the extreme, even if all the proper parties, for such a decree to be effectual, were before the court. No fraud is alleged in the making of the contract sought to be rescinded—the most that can be said in respect of that is that it was the result of hardship in the bringing about of which appellee was in a measure instrumental. Equity does not deal with things in the abstract, but with actual dealings, and so far as has been pointed out, or as we can see, there is not enough in the bill for it to take hold of. It can not be invoked here because of inadequacy of legal remedies, for it would seem that if anything is due to appellants for the work to be valued by Bowen the law would afford complete redress, notwithstanding the alleged fraud by him. No case for rescission is made by the bill, and no equity being shown, except such as the law side of the court has ample means for enforcing, the bill was properly dismissed, and the decree is affirmed.